24 N.J. Super. 519 (1953)
95 A.2d 18
GARFIELD TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HELENA TEICHMANN, EXECUTRIX OF THE ESTATE OF CURT TEICHMANN, JOHN RENTO, MICHAEL VIGORITO, CHARLES PASCALE, BRIGGIE PASCALE, JOSEPH DENEQUOLO, LUCIA DENEQUOLO AND JULIUS DiROCCO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1953.
Decided February 20, 1953.
*521 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Murray A. Laiks argued the cause for the plaintiff-appellant (Mr. Arthur J. Messineo, attorney).
Mr. Archibald Kreiger, attorney for respondents John Rento and Michael Vigorito, argued the cause for the defendants-respondents.
Mr. Edward A. Harmon, attorney for respondent Helena Teichmann.
Mr. Harry F. Weiss, attorney for respondents Joseph Denequolo et ux.
Mr. Charles S. Joelson, attorney for respondents Charles Pascale et ux.
*522 The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The plaintiff, Garfield Trust Company (hereinafter referred to as "Garfield"), appeals from a judgment of dismissal at the conclusion of the plaintiff's case in favor of the defendants-respondents.
Garfield instituted an action against the defendants, who were stockholders and former stockholders of the Paramount Finishing Co., Inc. (hereinafter referred to as "Paramount"), to enforce a written "continuing guaranty" executed and delivered by them to Garfield, guaranteeing "direct or contingent" obligations then existing or thereafter arising, owing by Paramount, therein called "the Borrower."
Under the first count of the complaint, Garfield sought recovery from all the defendants of three unpaid notes executed and delivered by Paramount to Roco-Tex Chemicals, Inc. (hereinafter referred to as "Roco-Tex"), two of which were in the respective amounts of $1,036.13 and $1,036.22, in payment of merchandise sold by Roco-Tex to Paramount, and the other note in the amount of $1,036.22, dated March 5, 1951, being a renewal of a prior note; all three notes having been discounted by Roco-Tex with Garfield and Roco-Tex having received the proceeds thereof.
Under the second count, Garfield sought recovery from the defendants Joseph Denequolo, Lucia Denequolo, Joseph Pascale and Briggie Pascale, under their continuing guaranty, of three unpaid promissory notes of Paramount to Roco-Tex aggregating the sum of $1,839.35, all three notes having been successfully negotiated for discount by Roco-Tex with Garfield and Roco-Tex having received the proceeds thereof.
Under the third count of the complaint, Garfield sought the recovery from the defendants Joseph Denequolo, Lucia Denequolo, Charles Pascale and Julius DiRocco, of an open account consisting of accounts receivable due from Paramount in the amount of $994.80, which accounts were assigned by Roco-Tex to Garfield.
On February 14, 1951 Teichmann, Rento and Vigorito, *523 executed an agreement with defendants, Joseph Denequolo and Charles Pascale, providing for the sale of their shares of stock in Paramount and for retirement from the company. Under the terms of the agreement Denequolo and Pascale assumed and agreed to pay certain obligations of the sellers of the stock to various named creditors, including Garfield, undertaking to indemnify the sellers from liability in the event of breach.
On the same day the sellers, Teichmann, Rento and Vigorito, delivered a communication to Garfield, terminating the agreement of guaranty dated December 28, 1950. Garfield acknowledged receipt thereof on February 14, 1951, agreeing that from that day the guaranty was no longer operative so far as Teichmann, Rento and Vigorito were concerned.
In connection with an application of Paramount to Garfield for an extension of credit, the defendants Denequolo and Pascale, the purchasers of the stock, together with their wives, executed written continuing guaranties identical in form with that previously made by defendants Teichmann, Rento and Vigorito, to Garfield.
On February 19, 1951 Paramount, then controlled by its new stockholders, executed three notes to Roco-Tex in the respective amounts of $613.11, $613.12 and $613.12, which notes were discounted by Garfield for Roco-Tex.
Between February 19, 1951 and March 6, 1951 Paramount made purchases from Roco-Tex aggregating the sum of $994.80, which account was assigned by Roco-Tex to Garfield.
The defendants filed answers denying liability for the obligations sued upon under the terms of the aforementioned written guaranties and asserting other defenses. Cross-claims were filed by the defendants Helena Teichmann, as executrix of the estate of her husband, Curt Teichmann, since deceased, John Rento and Michael Vigorito, against defendants, Charles Pascale and Joseph Denequolo, alleging that they had breached their indemnity agreement.
On motion of the defendants at the conclusion of the plaintiff's case the court directed a judgment of dismissal *524 in favor of the defendants, on the ground that the obligations sued upon were not direct loans of Paramount and, therefore, they were not within the terms of the guaranty agreements.
Garfield contends that the court erred in dismissing its complaint for the reasons that: (1) the ground of dismissal was beyond the scope of the pleadings and pretrial order, and (2) plaintiff had established a prima facie case against the defendants.
The pretrial order, in addition to particularizing the legal positions of the respective parties, provided that "the issues in this case are to be tried upon the pleadings as filed and as herein amended." At the time of the trial Rule 3:16, as amended on June 7, 1951, was effective and provided that the pretrial order with the pleadings "controls the subsequent course of action, unless modified at the trial to prevent manifest injustice." The ground upon which the trial court dismissed the complaint was based upon a construction of the guaranty agreements and a determination that all of the loans upon which Garfield instituted its action were made by way of an extension of credit to Roco-Tex, and not to Paramount; that under the guaranty agreements the defendants' liability for obligations of Paramount to the bank could be enforced only with respect to such loans as were made directly by the bank to Paramount. We fail to see the force of the appellant's argument that the pretrial order, not having specifically set forth the defense upon which the complaint was dismissed, is controlling in that it was filed later than the answers. In view of the answers filed denying liability under the guaranty agreements, it is elementary that it became the duty of the plaintiff to prove a prima facie case that the obligations sued upon were within the contemplation of the guaranty agreements. We know of no rule that, where the issue has been created, would relieve the plaintiff of its responsibility to prove a prima facie case. The question was not a new issue raised for the first time at the trial; liability was denied in the pleadings and appellant being charged with that knowledge, it was its duty to *525 prove a prima facie case of liability. A pretrial conference is, of course, designed to prevent surprise and eliminate maneuvering, but it was never intended to be used to establish a case of liability where, as here, no liability initially appears under the terms of the contract in issue. See Woodhouse v. Woodhouse, 20 N.J. Super. 229, 235, 236 (App. Div. 1952). Cf. Hodgson v. Pohl, 16 N.J. Super. 87 (App. Div. 1951), 9 N.J. 488 (1952).
Considering, now, the second ground advanced by appellant for reversal, namely, that the liabilities sued upon were continuing guaranties and embraced the notes and accounts receivable discounted with Garfield, for a more thorough understanding of the issue, it is essential that we set forth the guaranty agreement, to wit:

"Continuing Guaranty
Garfield, N.J., 12/28 1950
To The Garfield Trust Company, Garfield, N.J.:
For Valuable Considerations, and to induce you to loan money and extend credit in reliance hereon, I hereby guarantee, unconditionally, the payment, when due, of each and every obligation, direct or contingent, now existing or hereafter arising, owing to you by Paramount Finishing Co. Inc. hereinafter called the Borrower.
This Guaranty is a continuing guaranty, and shall remain in force until revoked by notice in writing to you, and revocation hereof shall not prejudice your claim hereunder with respect to any obligation arising prior to revocation.
This Guaranty shall extend to and cover every extension or renewal of, and every obligation accepted in substitution for, any obligation guaranteed hereby, and I shall be bound hereby irrespective of the existence, value or condition of any collateral security you may at any time hold.
I hereby waive notice of acceptance of this Guaranty, and also presentment, demand, protest and notice of dishonor of any note or other obligation hereby guaranteed.
I hereby consent and agree that you may, without prejudice to any claim against me hereunder, at any time, or from time to time, in your discretion, and without notice to me, (1) extend or change the time of payment, and the manner, place or terms of payment of any obligation hereby guaranteed, (2) exchange, release or surrender all or any collateral security which you may at any time hold in connection with any obligation hereby guaranteed, (3) sell, and yourself purchase, any such collateral at public or private sale or at any broker's board, crediting net proceeds upon any obligation *526 secured thereby, and (4) settle or compromise with the Borrower, or with any other person primarily or secondarily liable with the Borrower, any obligation hereby guaranteed, or subordinate the payment of any such obligation of the Borrower or other person to the payment of any other debt which may be owing to you.
No delay on your part in exercising any right hereunder, or in taking any action to collect or enforce payment of any obligation hereby guaranteed, either as against the Borrower of any other person primarily or secondarily liable with the Borrower, shall operate as a waiver of any such right or in any manner prejudice your rights against me.
I agree that, if the maturity of any obligation hereby guaranteed is accelerated, by bankruptcy or otherwise, as against the Borrower, such maturity shall also be deemed accelerated for the purposes of this Guaranty, and without demand upon or notice to me.
As security for the performance of my obligations hereunder, I hereby give you a general lien upon or right of setoff of, any balance of deposit account at any time to my credit with you, and any other of my funds or assets at any time in your custody or control.
If the obligations of the Borrower are also guaranteed by any other person, by continuing guaranty or by endorsement of any note of the Borrower or otherwise, the obligation of such other person and my obligation hereunder shall be deemed to be several; and the release by you of any such other guarantor, or settlement with him, or the revocation or impairment of his guaranty, shall not operate to prejudice your rights against me hereunder.
IN WITNESS WHEREOF, I have hereunto set my hand and seal as of the date above written.
 Curt Teichmann (L.S.)
 John Rento (L.S.)
 Michael Vigorito (L.S.)
 Witness:
 Edward Schneider"
"The rules governing the construction of contracts generally are to be referred to, of course, in resolving a question as to the interpretation of a contract of guaranty. * * * Primarily, the terms and provisions of the contract are to be considered with a view to discovering and giving effect to the intention of the parties thereto. * * *" 24 Am. Jur., Guaranty, sec. 56, p. 910. Washington Construction Co. v. Spinella, 8 N.J. 212 (1951). While it is a general rule that construction of a contract is a question of law for the court, that rule is predicated upon the absence of an issue of fact. Edge v. Boardwalk Securities Corp., 115 *527 N.J.L. 286 (E. & A. 1935); Jennings v. Pinto, 5 N.J. 562 (1950). Guaranty agreements are to be strictly construed. Lyon & Co. v. Plum, 75 N.J.L. 883 (E. & A. 1908); Smith v. Dowden, 92 N.J.L. 317 (Sup. Ct. 1919); Ferguson Carpet Co. v. Schottenfeld, 109 N.J.L. 539 (E. & A. 1932); Max v. Schlenger, 109 N.J.L. 298 (E. & A. 1932); and Boorstein v. Miller, 124 N.J. Eq. 526, 531 (Ch. 1938). An agreement guaranteeing a particular debt or debts does not extend to other indebtedness not within the manifest intention of the parties. 38 C.J.S., Guaranty, sec. 47, p. 1197. In accordance with the rule of strict construction, the guarantor cannot be held liable beyond the strict terms of his contract. Smith v. Dowden, supra; Ferguson Carpet Co. v. Schottenfeld, supra; Lyon & Co. v. Plum, supra; Boorstein v. Miller, supra.
An examination of the contract of guaranty discloses that the guarantors were to be responsible only for loans and credit extended directly to Paramount from Garfield. We advert to the language "to induce you to loan money and extend credit in reliance hereon, I hereby guarantee, unconditionally * * * each and every obligation, direct or contingent * * * owing to you by Paramount Finishing Co., Inc. hereinafter called the Borrower." (Italics ours) Throughout the agreement the word "Borrower" is used with specific reference to Paramount. There is an absolute dearth of any language which indicates liability assumed by the individual guarantors for any loans or credit extended to others than Paramount. Here the loans were made, not to Paramount, but to Roco-Tex. The notes had been given by Paramount to Roco-Tex for goods purchased from Roco-Tex and the accounts payable of Paramount were held by Roco-Tex for goods similarly sold by Roco-Tex to Paramount. After Roco-Tex became the owner of the respective promissory notes of Paramount and the accounts receivable of Paramount, it then applied to Garfield to extend credit to Roco-Tex on the several obligations of Paramount, and upon such credit being extended directly to Roco-Tex, it transferred *528 its title to the promissory notes and accounts receivable to Garfield. We find no ambiguity or uncertainty in the language employed in the agreement. The intent and meaning of the contract is crystal clear, and under a reasonable construction thereof no liability was imposed upon the guarantors except for loans or credit extended directly to Paramount. And, it appears from the testimony of Mr. Schneider, vice-president of Garfield, that there were such direct loans owing by Paramount to Garfield at the time of the sale of the controlling stock. Mr. Schneider's testimony is significant when he stated that at the time Mr. Teichmann requested the guaranty to be returned, "I informed him at the time that it was impossible for me to return it to him inasmuch as Paramount, the old Paramount, were presently liable. I think they owed us directly at the time  I may be wrong on this  but it was $20,000. or $30,000., somewhere along in there; and we also had some other contingent liabilities."
We think that the trial court correctly construed the agreement and there being no disputed factual issue, properly entered a judgment of dismissal. It cannot be successfully refuted, we think, that Paramount was not a borrower, so far as the obligations sued upon are concerned, but was a debtor of Roco-Tex, and that the credit extended on the obligations was directly to Roco-Tex. It would be a strained construction of the contract of guaranty, under the circumstances, to hold that the individual guarantors were liable for non-payment of the obligations upon which no credit or loan was extended to Paramount, but under plaintiff's proofs was extended directly to Roco-Tex.
The judgment is affirmed.